**FILED**
DISTRICT COURT OF GUAM

# UNITED STATES DISTRICT COURT

for the

District of Guam

MAY 17 2019

**JEANNE G. QUINATA
CLERK OF COURT**

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

Information associated with 671-688-3822 stored at
premises of DOCOMO PACIFIC, 890 S. Marine Corps
Drive Tamuning, Guam 96913

)
)
)
)
)
)

Case No. MJ- **19 - 00040**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Information associated with 671-688-3822 stored at premises of DOCOMO PACIFIC, 890 S. Marine Corps Drive Tamuning, Guam 96913

located in the _____ District of _____ Guam _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B which is incorporated herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 841(a)(1) & 846 and 952 | Distribution of Methamphetamine and Conspiracy |

The application is based on these facts:

☑ Continued on the attached sheet.

☑ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

SHAWN A. AYUYU, Task Force Officer, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 5/17/2019 2⁴ pm

_____
*Judge's signature*

City and state: Hagatna, Guam

HON. FRANCES TYDINGCO-GATEWOOD, Chief Judge
*Printed name and title*

ORIGINAL

# ATTACHMENT B

## PARTICULAR THINGS TO BE SEIZED

### INFORMATION TO BE DISCLOSED BY DOCOMO PACIFIC

To the extent that the information described in Attachment A is within the possession, custody, or control of **DOCOMO PACIFIC**, including any messages, records, files, logs, or information that have been deleted but are still available to **DOCOMO PACIFIC** or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), **DOCOMO PACIFIC** is required to disclose the following information to the government for each account or identifier listed in Attachment A from date of initial activation/use to present:

1. All voice mail, text, and multimedia messages stored and presently contained in, or on behalf of the account or identifier;

2. All existing printouts from original storage of all of the text messages described above;

3. All transactional information of all activity of the telephones and/or voicemail accounts described above, including log files, messaging logs, local and long distance telephone connection records, records of session times and durations, dates and times of connecting, methods of connecting, telephone numbers associated with outgoing and incoming calls, cell towers used, and/or locations used;

4. All text messaging logs, including date and time of messages, and identification numbers associated with the handsets sending and receiving the message;

5. All business records and subscriber information, in any form kept, pertaining to the individual account and/or identifiers described above, including subscribers' full names, addresses, shipping addresses, date account was opened, length of service, the types of service utilized, ESN (Electronic Serial Number) or other unique identifier for the wireless

16

device associated with the account, Social Security number, date of birth, telephone numbers, and other identifiers associated with the account;

6. Detailed billing records, showing all billable calls including outgoing digits;

7. All payment information, including dates and times of payments and means and source of payment (including any credit or bank account number);

8. Incoming and outgoing telephone numbers;

9. All records indicating the services available to subscribers of individual accounts and/or identifiers described above;

10. All records pertaining to communications between DOCOMO PACIFIC and any person regarding the account or identifier, including contacts with support services and records of actions taken.

# ATTACHMENT B

## PARTICULAR THINGS TO BE SEIZED

### INFORMATION TO BE DISCLOSED BY DOCOMO PACIFIC

To the extent that the information described in Attachment A is within the possession, custody, or control of **DOCOMO PACIFIC**, including any messages, records, files, logs, or information that have been deleted but are still available to **DOCOMO PACIFIC** or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), **DOCOMO PACIFIC** is required to disclose the following information to the government for each account or identifier listed in Attachment A from date of initial activation/use to present:

1. All voice mail, text, and multimedia messages stored and presently contained in, or on behalf of the account or identifier;

2. All existing printouts from original storage of all of the text messages described above;

3. All transactional information of all activity of the telephones and/or voicemail accounts described above, including log files, messaging logs, local and long distance telephone connection records, records of session times and durations, dates and times of connecting, methods of connecting, telephone numbers associated with outgoing and incoming calls, cell towers used, and/or locations used;

4. All text messaging logs, including date and time of messages, and identification numbers associated with the handsets sending and receiving the message;

5. All business records and subscriber information, in any form kept, pertaining to the individual account and/or identifiers described above, including subscribers' full names, addresses, shipping addresses, date account was opened, length of service, the types of service utilized, ESN (Electronic Serial Number) or other unique identifier for the wireless

1

device associated with the account, Social Security number, date of birth, telephone numbers, and other identifiers associated with the account;

6. Detailed billing records, showing all billable calls including outgoing digits;

7. All payment information, including dates and times of payments and means and source of payment (including any credit or bank account number);

8. Incoming and outgoing telephone numbers;

9. All records indicating the services available to subscribers of individual accounts and/or identifiers described above;

10. All records pertaining to communications between DOCOMO PACIFIC and any person regarding the account or identifier, including contacts with support services and records of actions taken.

## AFFIDAVIT

I, Shawn A. Ayuyu, being duly sworn, hereby depose and state as follows:

## A.    Background of Affiant

1. I am a Police Officer III with the Guam Police Department and have been so employed since October 2007. I have been assigned to the Neighborhood Patrol Division, Special Operations Division (SOD), Marine Patrol Division, Special Investigations Section (SIS) and the Mandana Drug Task Force (MDTF). I completed the Secret Service's National Computer Forensics Institute (NCFI) training, which certified me to perform digital forensic analysis on a variety of media devices such as computer hard drives, mobile devices such as androids and cell phones using a Forensic Evidence Recovery Device (FRED).

I am also a Task Force Officer with the U.S. Drug Enforcement Administration and have been so since August of 2018. As a Task Force Officer, my job assignment includes, but is not limited to, the investigation of violations of Title 21, United States Code, Sections 841(a)(1), 846, 843(b) and 856, which includes the detection, identification, and apprehension of those individuals involved in narcotics trafficking offenses.

2. As a Task Force Officer, I have participated in investigations of criminal violations of the Federal Controlled Substances Act. I have also participated in undercover investigations involving the purchase of controlled substances, assisted in the execution of state, local and federal search warrants relating to controlled substances and have conducted numerous surveillance and controlled deliveries in connection with narcotic investigations.

3. I am familiar with the operation of illegal drug trafficking organizations (DTOs) in the United States and DTOs with a foreign nexus. I know from my training, experience and discussions with other law enforcement officers that importers and distributors of controlled

1

substances often use cellular phones to communicate instructions, plans, and intentions to their criminal associates and to report on the progress of their criminal activities. I am aware that evidence of these instructions, plans, intention, reports and general discussions of criminal activity are sent or received in the form of SMS text messages, incoming and outgoing call histories or voice messages left in personal voice mail systems. I am familiar with the methods in which text messages are sent and received and know that third party phone applications, most commonly referred to as "Apps," are widely used.

4. The information contained within this affidavit is based upon my personal observations, training, and on information related to me by other law enforcement officers and investigators as set forth more fully herein. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence, fruits, and instrumentalities of the violations of 21 U.S.C. §§ 841(a)(1) and 846 are located within the electronic device, said information is stored at premises owned, maintained, controlled or operated by DOCOMO PACIFIC, as identified in Attachment A.

**B.** <u>**Purpose of Affidavit**</u>

5. This affidavit is made in support of the issuance of a search warrant to obtain judicial authority to obtain a search warrant for information associated with **671-688-3822** that is stored at premises owned, maintained, controlled, or operated by DOCOMO PACIFIC, a wireless provider headquartered at 890 S. Marine Corps Drive Tamuning Guam, 96913. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a),

2

2703(b)(1)(A) and 2703(c)(1)(A) to require DOCOMO PACIFIC to disclose to the government, records and other information in its possession pertaining to the subscriber or customer associated with the account, including the contents of communications.

6. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. §§ 841(a)(1), 846 and 952 have been committed by members of drug trafficking organization affiliated with Agat Blood Town (ABT). There is also probable cause to search the information described in Attachment A for evidence of these crimes as described in Attachment B.

### C.    Facts Establishing Probable Cause

7. On October 31, 2018, David TORRES ("TORRES") was arrested by the Guam Police Department for Possession of a Scheduled II and Scheduled I Controlled Substance and Illegal Possession of a Firearm. Approximately 8 ounces of suspected methamphetamine, several firearms and $18,960.00 in U.S. currency were seized as a result of TORRES arrest. TORRES was informed of his Miranda Rights, which he waived and agreed to speak with investigators. TORRES provided information that Jeffrey CAMACHO ("CAMACHO") and Cynthia PAULINO ("PAULINO") were his source of supply for methamphetamine. Based on TORRES' statement to investigators, the Guam Police Department were able to obtained local search warrants for CAMACHO's and PAULINO's residences.

8. On Wednesday November 1, 2018, the DEA Guam Resident Office (GRO) personnel participated in the execution of two local search warrants by the Guam Police Department (GPD) Mandana Drug Task Force (MDTF) and GPD Special Weapons and Tactics (SWAT). On November 1, 2018, law enforcement executed a local search warrant at #226 Luna Avenue in

3

Agana Heights, Guam, belonging to Cynthia PAULINO. As a result of the search warrant, investigators located 4.4 ounces of a crushed glass-like substance suspected to be methamphetamine, 30 grams of suspected marijuana, 14 grams of white powdery substance suspected to be cocaine and $510,222 in U.S. Currency. The crushed glass-like and white powdery substance were field tested which yielded a presumptive positive result for methamphetamine and cocaine. The search of CAMACHO'S residence resulted in the seizure of drug paraphernalia and a firearm. Both PAULINO and CAMACHO were charged in the Superior Court of Guam with multiple counts of Possession of a Scheduled II Controlled Substance. CAMACHO was additionally charged with Possession of a Firearm without a Guam Firearms ID and Possession of an Unregistered Firearm.

9. On Thursday, April 11, 2019, while at DEA GRO, in the presence of PAULINO'S Attorney Samuel Teker, TFOs Ayuyu and J. Cruz conducted a proffer interviewed with PAULINO who provided the following information.

10. PAULINO stated she purchased an ounce of methamphetamine at a time and paid $3,200 to $4, 500 per ounce. Once purchased, PAULINO would break down the methamphetamine into gram or plate (1/10 of a gram) quantities and sell them. PAULINO described plate quantities as user quantities. PAULINO stated she normally sells a gram for $300 or less depending on how many grams were being purchased. PAULINO claimed to make approximately eight-thousand-dollars ($8,000) on a good day selling methamphetamine.

11. Investigators noted marking on packages containing methamphetamine found at PAULINO'S residence with DX, LA, RF, M, KF, S and A3. PAULINO stated that some customers had a preference on the methamphetamine they would purchase. Depending on their preference, PAULINO would obtain the methamphetamine from corresponding bags and

4

indicated that a few of her customers have requested and preferred the methamphetamine from packaging "A3 or LA". Investigators asked PAULINO what "A3 or LA" meant which PAULINO explained that "A3" was the third re-up (third order of methamphetamine) supply from Agat. PAULINO further explained that "LA" were the initials of her source of supply from Agat, Liberty AGUON ("AGUON").

12. PAULINO stated she initially ordered her methamphetamine from Jeffrey CAMACHO who then called his source "Rick Budz" (Budz) and paid $4,800 for an ounce. PAULINO stated she facilitated her drug transactions with CAMACHO and Budz using her cell phone. PAULINO stated herself, CAMACHO, and Budz would meet at CAMACHO'S residence in Mongmong to complete the drug transaction. PAULINO stated on one occasion while conducting a drug transaction with Budz at CAMACHO'S residence, Budz was left by his ride and had asked PAULINO and CAMACHO for a ride back home.

13. PAULINO stated that she contacted Budz directly to purchase methamphetamine. According to PAULINO, she has successfully purchased methamphetamine from Budz on numerous occasions in the past. PAULINO further stated that prior to the search warrant execution on her home she texted Budz to order more methamphetamine. However, another individual responded via text message indicating he was Budz's "Pare" (Pare is a Chamoru term used on Guam to identify a person who is the godparent of your child or that you are the godparent of their child). PAULINO subsequently arranged to purchase an ounce of methamphetamine with the unknown individual and was instructed to meet at a residence in Agat. Prior to meeting in Agat, PAULINO was provided directions to the residence via text message, which indicated, "second left after the cemetery". At the residence, PAULINO met an

5

individual who identified himself as "Butter Ball". "Butter Ball" retrieved an ounce of methamphetamine from a white Toyota Tacoma truck that was parked at the residence.

14. PAULINO stated on a subsequent drug transaction, again at CAMACHO's residence, PAULINO met an individual named Liberty AGUON who was standing outside the residence and was operating the same Toyota Tacoma pickup that met PAULINO and "Butter Ball" at the Agat residence. AGUON admitted to PAULINO that he (AGUON) was the one who left Budz at CAMACHO'S residence after Budz sold the ounce of methamphetamine to PAULINO (as described in the previous paragraph). Based on what AGUON told PAULINO, PAULINO believed that AGUON is the source of supply of methamphetamine for Budz and Butter Ball.

15. In the presence PAULINO'S Attorney, Samuel Teker, TFOs Ayuyu and Cruz obtained a written consent to perform a digital forensic examination on PAULINO's mobile device with phone number 671-686-8947. PAULINO acknowledged by signing the Guam Police Department's consent form. TFO Ayuyu conducted a digital forensic examination of PAULINO's mobile device and discovered that phone number **671-688-3822** sent a message to PAULINO containing directions to a residence in Agat. The phone number **671-688-3822** saved on PAULINO's contact list as MAULO and had multiple calls and texts to and from PAULINO's cell phone, starting on October 11, 2018. On October 11, 2018, PAULINO sent a text message to **671-688-3822 (MAULO)** believed to be utilized by Budz, ordering an ounce of methamphetamine. On the same day, a subsequent message was sent to **671-688-3822 (MAULO)** from PAULINO negotiating the price for the ounce of methamphetamine asking to pay $4,500.00. A response from **671-688-3822 (MAULO)** indicated that $4,800.00 was the best price for the ounce. On October 13, 2018, PAULINO again texted **671-688-3822 (MAULO)**

6

asking if the price was still the same with a response that indicated it was. Subsequent texts were sent from **671-688-3822 (~~MAULUO~~)** to PAULINO providing directions to a residence in Agat.

*MAULO* 

16. On October 17, 2018, **671-688-3822 (MAULO)** texted PAULINO verifying PAULINO's number in order to save it. **671-688-3822 (MAULO)** goes on to ask PAULINO if PAULINO had any big buyers which PAULINO replied "like what" meaning how much methamphetamine is being sought. PAULINO subsequently responded that PAULINO had already purchased methamphetamine that day.

17. PAULINO believed that "Budz", "Butter Ball" and "AGUON" are part of a drug trafficking organization (DTO) affiliated with the criminal street gang Agat Blood Town (ABT) and that they use multiple phones for their drug trafficking activities. PAULINO believed that the phone numbers listed in her contacts under "RB-Blood" are also "burner' or "work" phones that "Budz, "Butter Ball" and AGUON use to facilitate the sale and distribution of illegal narcotics within their Drug Trafficking Organization (DTO). PAULINO used "RB-Blood" as the contact name due to his affiliation with ABT. Based on my training and experience, I know that DTO's use several cell phones "burner" phones or "working phones" to facilitate their drug trafficking activities and to hide their identity from law enforcement.

18. A further analysis of PAULINO's phone by TFO Ayuyu revealed two phone numbers (671-971-3847, 671-972-2844) saved under the contact name RB-Blood. The numbers also sent text messages to PAULINO's phone coordinating/facilitating drug transactions.

19. TFO Ayuyu obtained subscriber and phone toll records from DOCOMO PACIFIC for phone number **671-688-3822**. These toll records cover the time period from June 1, 2018 through April 16, 2019. The records revealed that **671-688-3822** is a prepaid number with no subscriber information. TFO Ayuyu conducted an analysis of the phone tolls between **671-688-**

7

**3822** and found numerous phone calls and text messages sent to and from PAULINO's phone 671-686-8947 to **671-688-3822** with the last contact made on October 15, 2018. TFO Ayuyu also discovered that the phone numbers listed in PAULINO'S contacts under RB-Blood (671-689-4956, 671-971-3847, 671-972-2844, 671-788-1277, 671-788-4145, 671-997-1712) and **671-688-3822** all communicated on different dates and times either by calling or by text to phone number 671-988-9577 and that all the aforementioned numbers found on PAULINO's contact list is believed to be associated with ABT's DTO. The most recent contact between 671-688-3822 and one of the numbers listed under RB-Blood was on April 16, 2019.

20. TFO Ayuyu conducted a check with Guam Police Departments Law Enforcement Records Management System (LEARMS) and discovered that phone number 671-988-9577 was associated to Jovin Lono SANTOS ("SANTOS"). SANTOS is a known drug trafficker and leader of the ABT DTO. Further analysis was conducted between SANTOS' number 671-988-9577 and **671-688-3822** and discovered several outgoing-incoming calls and text messages from **671-688-3822** to 671-988-9577. The last contact between 671-688-3822 and the number associated with SANTOS was on February 25, 2019.

21. "Rick Budz", "Butter Ball" and Liberty AGUON are indexed in the Drug Enforcement Administration's and local enforcement's data base as Enrique DUENAS ("DUENAS"), Brandon BALURAN ("BALURAN") and Liberty CONCEPCION ("CONCEPCION"), respectively. A check with Guam Police Department records revealed that DUENAS has prior arrest for Assault, Aggravated Assault, Multiple Possession of Schedule II Controlled Substances charges, Criminal Sexual Conduct and Attempted Murder. BALURAN has prior arrest for Burglary, Conspiracy to Commit Murder, Forgery/Theft by Receiving and DUI. CONCEPCION was arrested for Aggravated Assault and Rioting.

8

22. On May 8, 2019, TFO Ayuyu received information from DOCOMO PACIFIC that phone number **671-688-3822** is still currently active and in use.

23. I know importers and distributors of controlled substances (specifically methamphetamine) coordinate the importation, transportation, ordering, purchasing and the distribution of controlled substances and proceeds from the sales of controlled substances via cellular telephones. I am aware that criminals often use cellular phones to communicate instructions, plans, and intentions to their criminal associates and to report on the progress of their criminal activities. I am aware that criminal associates often will send pictures and videos of drug or drug proceeds to their criminal associates. I know that drug traffickers use "burner phones" (prepaid) when conducting their drug trafficking activities to hide their identity and evade detection from law enforcement. I also believe that the target phone details **(671-688-3822)** might contain evidence regarding other methamphetamine trafficking activities involving Liberty CONCEPCION, Enrique DUENAS and Brandon BALURAN and other unknown associates.

## D.    **Relevant Facts on Wireless Services and Technology**

24. In my training and experience, I have learned that DOCOMO PACIFIC is a company that provides cellular telephone access to the general public, and that stored electronic communications, including retrieved and un-retrieved voicemail, text, and multimedia messages for DOCOMO PACIFIC subscribers may be located on the computers of DOCOMO PACIFIC. Further, I am aware that computers located at DOCOMO PACIFIC contain information and other stored electronic communications belonging to unrelated third parties.

25. Wireless phone providers often provide their subscribers with voicemail services. In general, a provider will store voicemail messages on behalf of a particular subscriber until the

9

subscriber deletes the voicemail. If the subscriber does not delete the message, the message may remain in the system of DOCOMO PACIFIC for weeks or months.

26. Among the services commonly offered by wireless phone providers is the capacity to send short text or multimedia messages (photos, audio, or video) from one subscriber's phone or wireless device to another phone or wireless device via one or more wireless providers. This service is often referred to as "Short Message Service" ("SMS") or "Multimedia Messaging Service" ("MMS"), and is often referred to generically as "text messaging" or "wireless messaging." Based on my knowledge and experience, I believe that stored electronic communications, including SMS and MMS messages that have been sent or received by subscribers, may be stored by DOCOMO PACIFIC for short periods incident to and following their transmission. In addition, providers occasionally retain printouts from original storage of text messages for a particular subscriber's account.

27. Wireless phone providers typically retain certain transactional information about the use of each telephone, voicemail, and text-messaging account on their systems. This information can include log files and messaging logs showing all activity on the account, such as local and long distance telephone connection records, records of session times and durations, lists of all incoming and outgoing telephone numbers or e-mail addresses associated with particular telephone calls, voicemail messages, and text or multimedia messages. Providers may also have information about the dates, times, and methods of connecting associated with every communication in which a particular cellular device was involved.

28. Many wireless providers retain information about the location in which a particular communication was transmitted or received. This information can include data about which

10

"cell towers" (i.e., antenna towers covering specific geographic areas) received a radio signal from the cellular device and thereby transmitted or received the communication in question.

29. Wireless providers may also retain text messaging logs that include specific information about text and multimedia messages sent or received from the account, such as the dates and times of the messages. A provider may also retain information about which cellular handset or device was associated with the account when the messages were sent or received. The provider could have this information because each cellular device has one or more unique identifiers embedded inside it. Depending upon the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Station Equipment Identity ("IMEI"). When a cellular device connects to a cellular antenna or tower, it reveals its embedded unique identifiers to the cellular antenna or tower in order to obtain service, and the cellular antenna or tower records those identifiers as a matter of course.

30. Wireless providers also maintain business records and subscriber information for particular accounts. This information could include the subscribers' full names and addresses, the address to which any equipment was shipped, the date on which the account was opened, the length of service, the types of service utilized, the ESN or other unique identifier for the cellular device associated with the account, the subscribers' Social Security Numbers and dates of birth, all telephone numbers and other identifiers associated with the account, and a description of the services available to the account subscribers. In addition, wireless providers typically generate and retain billing records for each account, which may show all billable calls (including outgoing

11

digits dialed). The providers may also have payment information for the account, including the dates and times of payments and the means and source of payment (including any credit card or bank account number).

31. In some cases, wireless subscribers may communicate directly with a wireless provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Wireless providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

32. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require DOCOMO PACIFIC to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

33. Based on my training and experience and the facts, as set forth in this affidavit, there is probable cause to believe that on the computer systems in the control of DOCOMO PACIFIC. there exists evidence of a crime. Accordingly, a search warrant is respectfully requested. This Court has jurisdiction to issue the requested warrant because it is "a court with jurisdiction over the offense under investigation" as defined by 18 U.S.C. § 2711, 18 U.S.C. § 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that – has jurisdiction

12

over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i). Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

34. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(l)(A) & 2703(c)(l)(A), by using the warrant to require DOCOMO PACIFIC to disclose to the government copies of the records and other information (including the content of texts and communications) described in Attachment A. Upon receipt of the information described in Attachment A, government-authorized persons will review that information to locate the items described in Attachment B.

## REQUEST FOR A NONDISCLOSURE ORDER

35. It is respectfully requested that this Court, pursuant to 18 U.S.C. § 2705(a)(1)(A), issue a nondisclosure order to DOCOMO PACIFIC. for a period of ninety (90) days, because disclosure to any individual or entity in any matter related to this search warrant would seriously jeopardize the investigation now in progress.

*//*

*//*

*//*

*//*

*//*

*//*

*//*

13

## REQUEST FOR SEALING

36. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is not known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

FURTHER AFFIANT SAYETH NAUGHT.

_____
SHAWN A. AYUYU
Task Force Officer
Drug Enforcement Administration

**ATTACHMENT A**

**PROPERTY TO BE SEARCHED**

This warrant applies to information associated with mobile phone number (671) 688-3822 that is stored at premises owned, maintained, controlled, or operated by DOCOMO PACIFIC, a wireless provider headquartered at 890 South Marine Corps Drive, Tamuning, Guam.

# ATTACHMENT B

## PARTICULAR THINGS TO BE SEIZED

### INFORMATION TO BE DISCLOSED BY DOCOMO PACIFIC

To the extent that the information described in Attachment A is within the possession, custody, or control of **DOCOMO PACIFIC**, including any messages, records, files, logs, or information that have been deleted but are still available to **DOCOMO PACIFIC** or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), **DOCOMO PACIFIC** is required to disclose the following information to the government for each account or identifier listed in Attachment A from date of initial activation/use to present:

1. All voice mail, text, and multimedia messages stored and presently contained in, or on behalf of the account or identifier;

2. All existing printouts from original storage of all of the text messages described above;

3. All transactional information of all activity of the telephones and/or voicemail accounts described above, including log files, messaging logs, local and long distance telephone connection records, records of session times and durations, dates and times of connecting, methods of connecting, telephone numbers associated with outgoing and incoming calls, cell towers used, and/or locations used;

4. All text messaging logs, including date and time of messages, and identification numbers associated with the handsets sending and receiving the message;

5. All business records and subscriber information, in any form kept, pertaining to the individual account and/or identifiers described above, including subscribers' full names, addresses, shipping addresses, date account was opened, length of service, the types of service utilized, ESN (Electronic Serial Number) or other unique identifier for the wireless

16

device associated with the account, Social Security number, date of birth, telephone numbers, and other identifiers associated with the account;

6. Detailed billing records, showing all billable calls including outgoing digits;

7. All payment information, including dates and times of payments and means and source of payment (including any credit or bank account number);

8. Incoming and outgoing telephone numbers;

9. All records indicating the services available to subscribers of individual accounts and/or identifiers described above;

10. All records pertaining to communications between DOCOMO PACIFIC and any person regarding the account or identifier, including contacts with support services and records of actions taken.